IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No.  3:18-CR-00025 (NKM) |
| | : | |
| **v.** | : | |
| | : | |
| **BENJAMIN DRAKE DALEY** | : | |
| **MICHAEL PAUL MISELIS** | : | |
| **THOMAS WALTER GILLEN** | : | |

## UNITED STATES' OPPOSITION TO BOND PENDING APPEAL

The United States, by and through United States Attorney Thomas T. Cullen, hereby opposes the defendants' request for bond pending appeal. In the event that the Court is inclined to reconsider its previous determinations, the United States respectfully requests a hearing on this matter.

## SUMMARY OF THE ARGUMENT

After presenting overwhelming evidence of dangerousness, both this Court and Magistrate Judge Hoppe correctly (and independently) determined that all three defendants posed a danger to the community and should be detained pending trial. Nothing regarding their dangerousness has changed since those determinations, and the defendants have failed to adduce sufficient evidence to overcome these initial findings. That alone justifies the defendants' detention pending appeal and requires that they commence serving their sentences like the vast majority of defendants that appear before this Court.

But, as this Court knows, because the defendants have been convicted, the relevant standards now weigh even more heavily in favor of their detention. Rather than the government having to show that the defendants are a danger to the community (which it has), the defendants' guilty pleas and sentences have now shifted the burden to the defendants to prove by clear and convincing evidence that they do *not* pose a danger to the community. Given this Court and Judge Hoppe's previous findings of dangerousness – when the defendants were presumed innocent and

the attendant standard was far higher – the defendants cannot now meaningfully argue they pose no danger. If anything, in light of the substantial sentences this Court properly imposed, the defendants now pose even more of a danger.

The defendants submit that their parents should serve as third-party custodians. Although these parents may endeavor to do their best, these are the same parents from whom the defendants previously concealed their violent conduct and participation in a violent white-supremacist organization. For example, in Defendant Daley's case, in his second attempt to litigate detention before Judge Hoppe, it was revealed that he had enlisted his mother to become an unwitting participant in the offense by lying to her about his intent to travel to the Unite the Right rally and asking her to purchase the plane ticket for him so there would be no paper trail. Try as these parents might, this Court and Judge Hoppe have already ruled – correctly – that their efforts cannot meet their high burden of showing by clear and convincing evidence that they are not likely to pose a danger to the safety of any other person or the community under § 3143(b)(1)(A).

Finally, as a practical matter, the government notes that the defendants' appeal in the United States Court of Appeals for the Fourth Circuit is already well underway. Their opening brief in the Fourth Circuit is due in just a little over three weeks (September 18, 2019).

## LEGAL BACKGROUND

The relevant legal framework for release pending appeal by a defendant is provided by 18 U.S.C. § 3143(b). That statute provides that a judicial officer shall order that where a defendant has been found guilty of an offense and sentenced to a term of imprisonment, he shall be detained, unless a judicial officer finds (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community; and (B) that the appeal raises a substantial question of law or fact likely to result in reversal, order for a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal

process. See 18 U.S.C. § 3143.

## ARGUMENT

### I. THE DEFENDANTS REMAIN A DANGER TO THE COMMUNITY.

#### A. DEFENDANT DALEY

On October 9, 2018, a detention hearing was held for Defendant Daley in the Central District of California. The CDCA magistrate judge found by clear and convincing evidence that no combination of conditions would assure the safety of any person or the community. In so finding, the CDCA magistrate found as to dangerousness:

- Criminal history included carrying a concealed weapon.
- Traveled across country for specific purposes of committing violence.
- Traveled to Italy and Germany to meet with white supremacy groups.
- Captured on film and in video committing acts of violence.
- Two firearms seized at residence along with $10,000 cash, smoke grenades, and skull masks.
- Much of the risk posed comes from defendant's access to internet.
- Defendant was the alleged leader of the organization.

See United States v. Benjamin Daley, C.D.Ca. Crim. No. 2:18-mj-02623 (Detention Order at 3, filed October 9, 2018). Moreover, unlike the other two defendants, the CDCA magistrate judge also found that no combination of conditions would also guarantee his appearance as required. See id. at 2.

After being transported to Charlottesville, the defendant appealed his detention order and sought to re-litigate the issue of his detention before United States Magistrate Judge Joel C. Hoppe. On December 3, 2018, a bond reconsideration hearing was held, and in addition to the sworn allegations in the complaint, multiple exhibits in support of the defendant's dangerousness were admitted. At that time, Daley proposed effectively the same release plan that he now submits to

this Court, in which his mother would serve as a third-party custodian. In support, his mother testified, and during her testimony it was revealed that the defendant asked her to book his flight to Charlottesville. The testimony was unsurprising in that it complemented the government's other evidence the defendant sought to avoid any paper trail with respect to the Unite the Right rally, but it was the first evidence that he had sought to include his parents in his efforts to do so. His mother further revealed that Daley had concealed from her his intent to travel to the Unite the Right rally. In his ruling, Judge Hoppe stated:

> Somewhat undermining [the proposed release plan to his parents] is that there's evidence that was presented today that – that Mr. Daley got things from his parents, some suggestion that – to help cover his financial tracks for coming to Charlottesville, that he had his mother unwittingly assist in that by using her credit card and paying her back for plane travel. Concealing that information from her gives me some pause about – about whether the plan would be effective.

12/3/18 Tr. at 49-50. But Judge Hoppe ruled that the real concern was dangerousness:

> But the real – the real concern, I think, the concern that pushes it over the edge for me is the danger to the community that Mr. Daley presents. At this point they are allegations, they are allegations in a complaint. There have proffers presented in open court, there have been pictures in support of the proffers . . .what I have in front of me, the allegations and some other evidence would show that you were involved in founding a group that at least in part the purpose was to train for violence, train for combat. And it, and this violence would be directed towards people who had different views than you, people of different genders, people of different races, people of different religious backgrounds. And that there were two incidents in California while you were on probation where this group you're involved with was involved with violence. And then in August of 2017, there's, you know, the travel across the country to engage in similar acts of violence against similar people who had different views than you. And these events in Charlottesville occurred on night on August 11 and then also the next day. And that there's pictures of you actively hurting people. And then that afterwards the acts of recruiting and promoting this group[,] encouraging other to engage in this sort of conduct continued. And it's these things that I just – the nature of the offense and these continuous acts in a number of different places that just tell me that I can't be reasonably assured that there any conditions that I could put on you that would ensure the safety of the community. And so it's really on the dangerousness that I find that the detention is necessary in this case.

12/3/2018 Tr. at 50-51.  In an order the next day, Judge Hoppe found "by clear and convincing evidence that no conditions will reasonably assure the safety of another person or the community if the Defendant is released."  ECF No. 65 at 1.  In his order, Judge Hoppe carefully described all of the facts behind this determination of dangerousness.

Since Judge Hoppe's dangerousness determination – and moreover, the CDCA magistrate's prior determination of the same – only two important changes have occurred that affect the assessment of Daley's motion for bond pending appeal:

- First, the aforementioned "allegations" which supported Daley's detention are no longer mere allegations.  They are fact, admitted by the defendant under oath and proven by the government beyond a reasonable doubt.

- Second, the burden has shifted away from the government, and now resides with the defendant to prove that he is not likely to pose a danger to the community.

The case for Daley's dangerousness has only strengthened, and the legal threshold for release has only become more difficult for him to surmount.  This Court should not reverse the prior determinations of dangerousness and should deny his motion for bond pending appeal.

In an attempt to persuade the Court that he is no longer a danger, and in response to the Court's order, Defendant Daley offers $10,000 in cash.  Granted, Daley offers $10,000 for a $100,000 secured bond (presumably pursuant to § 3142(c)(1)(B)(xii), not § 3142(c)(1)(B)(xi) as mentioned in the Court's order), but he has offered no property or any additional information as to how that $100,000 bond would be secured.  Accordingly, his offer should be appropriately considered as $10,000 cash.  In the government's view, no amount of money or property can ameliorate the Court's repeated findings of dangerousness.  Should this Court view the issue differently, then surely that figure must be higher than $10,000 cash in the case of Defendant Benjamin Daley, who was a leader of the white-supremacist organization, who committed particularly violent acts in Charlottesville, who committed this offense while on probation, who literally *laughed* at the evidence presented in his sentencing, and who remains in frequent contact with members of the white supremacist movement while incarcerated.

### B. DEFENDANT MISELIS

On October 2, 2018, a detention hearing was held for Defendant Miselis in the Central District of California. The CDCA magistrate judge found by clear and convincing evidence that no combination of conditions would assure the safety of any person or the community. In so finding, the CDCA magistrate found as to dangerousness:

- Traveled across country for specific purposes of committing violence.

- Traveled to Italy and Germany, same as co-conspirators, to meet with white supremacy groups.

- Captured on film and in video committing acts of senseless violence.

- Some danger defendant poses comes from access to internet, which is hard to monitor.

- Possessed ammunition, skull masks, and smoke bombs when arrested.

See United States v. Michael Miselis, C.D.Ca. Crim. No. 2:18-mj-02624 (Det. Order at 3). However, while pending transport to Virginia, Miselis sought reconsideration of his bond determination, and in support, he offered a $500,000 bond secured by his parents' home which had approximately $1,000,000 in equity. The CDCA magistrate reconsidered her decision, and elected to release Defendant Miselis on a $350,000 bond secured by his parent's residence, but the CDCS magistrate stayed her order to allow the government the opportunity to appeal the decision.

The government immediately appealed the decision to this Court. On December 3, 2018, this Court held a detention hearing at which the government introduced considerable evidence of the defendants' dangerousness and risk of flight, to include the sworn allegations in the complaint and multiple exhibits made a part of the record. After a hearing, this Court reversed the CDCA magistrate's decision to release the defendant:

> Having considered the record and the parties' arguments in light of the statutory factors set forth in § 3142(g), the Court finds that no condition or combination of conditions of release would reasonably assure the appearance of the Defendant and the safety of any other person and the community. The Court finds that the Government proved by a preponderance of the evidence that the Defendant travelled on at least three occasions with the purpose of committing

> violence at rallies in California and Charlottesville, Virginia; that Defendant did in fact engage in acts of violence at those rallies; that Defendant belongs to the "Rise Above Movement" ("RAM"), a radical white supremacist organization that spreads its message via the Internet and has pursued its message through violence; and that Defendant has travelled internationally to Germany, Italy, and Ukraine to meet with other members of RAM and/or members of other similarly situated groups. The Government appears to have substantial evidence against the Defendant, including video and photographic evidence from the three rallies in question, the Defendant's text messages, and the Defendant's travel records.

United States v. Michael Miselis, Crim. No. 3:25-cr-18, Dkt. No. 66 at 2-3 (Moon, J.). Since this Court's own determination of the defendant's dangerousness and risk of flight, nothing has occurred to mitigate the Court's prior concerns of dangerousness or risk of flight. To the contrary, just as with Defendant Daley:

- Any allegations that were submitted by proffer in support of the defendant's detention are now fact, admitted by the defendant under oath and proven by the government beyond a reasonable doubt.

- The burden has shifted away from the government, and now resides with the defendant to prove that he is not likely to pose a danger to the community or a risk of flight.

The case for Miselis' dangerousness has only strengthened, and the legal threshold for release has become more difficult for him. This Court should not reverse its own prior determination of dangerousness and should deny his motion for bond pending appeal.

In response to the Court's order, Defendant Miselis notes his family's substantial resources, and suggests that he is willing to post a $100,000 bond, although he does not specify what exact property would be forfeited to secure such a bond. Presumably, it would be the property of his parents, which would place this Court (and the government) in the peculiar position of forfeiting the property of his parents for the defendant's potential failure to appear, in the event he flees to the Ukraine where he maintains a serious romantic relationship. In any event, as noted above, this defendant has already offered an appearance bond of $500,000 secured by his parent's residence. Faced with that prior offer, this Court nevertheless found by clear and convincing

evidence that he still posed a risk of flight (and also dangerousness). It is hard to understand how, after the allegations have been proven beyond a reasonable doubt and the burden has shifted, the defendant's offer of $100,000 should now alleviate the Court's concerns.

This is to say nothing of the defendant's dangerousness, which is not mitigated by any amount of money to be offered, particularly in light of this Court's observation at sentencing that Miselis appeared to be the most violent actor in Charlottesville.

### C. DEFENDANT GILLEN

On October 2, 2018, a detention hearing was held for Defendant Gillen in the Central District of California. The CDCA magistrate judge found by clear and convincing evidence that no combination of conditions would assure the safety of any person or the community. In so finding, the CDCA magistrate found as to dangerousness:

- Traveled across country for specific purposes of committing violence.

- Ubiquitous access to internet, which was used to plan and coordinate commission of violence and quite possibly to encourage others to do so.

- Convictions include obstructing a public officer and possessing a firearm without identifying mark.

- Had four firearms and ammunition at residence (even though he was a felon).

- Defendant may have been on probation at time of instant offense.

- Allegedly depicted punching protestor who has fallen to ground indicating premeditation to fight.

See United States v. Thomas Gillen, C.D.Ca. Crim. No. 2:18-mj-02622 (Det. Order at 3). Defendant Gillen never sought reconsideration of his bond determination.

Just as with the other defendants, since the CDCA magistrate judge's dangerous determination, nothing has occurred to mitigate such dangerousness. Now, of course, all the allegations have been proven as fact, admitted by Gillen under oath and proven beyond a reasonable doubt. Moreover, the burden has shifted away from the government to Gillen to show

that he is no longer a danger. Without any evidence of a change in circumstances, the case for Gillen's dangerousness has only strengthened and the legal threshold has become more difficult for him to surmount.

But, there is more. Prior to his sentencing, the Court and the government uncovered more specifics about Gillen's criminal history, scored as Category IV, which includes obstructing/resisting a police officer while capture by law enforcement. In another incident, the defendant shot himself with a firearm with an obliterated serial number, and then lied and said he was shot in a drive-by shooting. The government also presented substantial evidence that Gillen, who was prohibited under federal law from possessing firearms prior to the instant offense, possessed, used, and carried firearms on multiple occasions in or around the same time he participated in the charged conspiracy. Simply put, the defendant has done nothing to show by clear and convincing evidence that he is not still a danger to the community. This Court should not reverse the prior determination of dangerousness and, instead, it should deny his motion for bond pending appeal.

In response to the Court's order, Defendant Gillen offers effectively the same release plan that was denied by the CDCA magistrate. As to the Court's particular request regarding property to be forfeited under 18 U.S.C. 3142(c)(1)(B)(xi) "with specificity," Defendant Gillen makes it clear. He offers nothing.

## II. THE DEFENDANTS' APPEAL DOES NOT INVOLVE A SUBSTANTIAL QUESTION OF LAW

Because all of the defendants remain a danger and have not shown otherwise by clear and convincing evidence, the Court need not address the additional issue of whether their appeal involves a substantial question of law. But, in any event, their appeal does not present such a question. A "substantial question" is "a close question or one that very well could be decided the other way." United States v. Coghill, 2006 U.S. Dist. LEXIS 18764, (W.D.Va. 2006) (Moon, J.) (denying motion for release pending appeal in a white collar fraud case, where even though

defendant posed no danger, release was not appropriate because appeal did not involve substantial question of law) (citing United States v. Steinhorn, 927 F.2d 195, 196 (4th Cir. 1991)).

Here, as to the constitutionality of 18 U.S.C. § 2101, every circuit to address the issue and every court (with one exception) has found the statute to be constitutional. The one exception is a recent decision by a federal district court in the Central District of California who found the statute to be unconstitutionally overbroad – a claim that this Court has already rejected and found to have no merit. United States v. Benjamin Daley, et al., Crim. No. 3:25-cr-18, Dkt. No. 104 at 17. Moreover, in finding some parts of the statute troubling with respect to speech, it appears the CDCA court did not consider that other provisions of the statute (such as, those limited to conduct) could be left intact. See Ayotte v. Planned Parenthood of Northern New Eng., 546 U.S. 320, 328–29 (2006) ("Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem," severing any "problematic portions while leaving the remainder intact."). When numerous other courts to address the issue have found the statute to be constitutional, a single district court's opinion to the contrary simply does not give rise to a substantial question of law. Accordingly, even if these defendants were non-violent white-collar defendants who posed no danger (which they clearly are not), they still would not be entitled to release pending appeal.

## CONCLUSION

The defendants remain a danger to others and to the community, and they have shown no reason why this Court should reverse its prior determinations of dangerousness. They have not shown by clear and convincing evidence they are not likely to pose a danger, and on that basis alone, the Court should deny their motion for bond pending appeal. Moreover, the issue the defendants raise on appeal – which is well underway with their opening brief due on September 18, 2019 – does not raise a substantial question of law. For these reasons, the Court should deny their motions for release pending appeal.

Respectfully submitted,

  /s/Thomas Cullen
THOMAS T. CULLEN
UNITED STATES ATTORNEY
WESTERN DISTRICT OF VIRGINIA

  /s/Christopher R. Kavanaugh
Christopher Kavanaugh, Va. Bar. 73093
Assistant United States Attorney
United States Attorney's Office
255 W. Main Street
Charlottesville, VA 22902
434-293-4283
christopher.kavanaugh@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2019, I electronically filed the foregoing motion with the Clerk of the Court using CM/ECF system, which will send notification of such filing to all counsel of record.

    /s/Christopher R. Kavanaugh
Christopher Kavanaugh, Va. Bar. 73093
Assistant United States Attorney
United States Attorney's Office
255 W. Main Street
Charlottesville, VA 22902
434-293-4283
christopher.kavanaugh@usdoj.gov